UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEAN PAPPAS, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>AMN HEALTHCARE SERVICES, et al.,<br><br>    Defendants. | Case No. 24-cv-01426-JST<br><br>**ORDER DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>Re: ECF No. 21 |

  Before the Court is AMN Healthcare Services, Inc. ("AMN"), as well as Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals' ("Kaiser") (collectively, "Defendants'") motion to compel arbitration. ECF No. 21. For the reasons set forth below, the Court will deny the motion.

**I.  BACKGROUND**

  **A.  Parties and Claims**

  Kaiser is a non-profit corporation that operates healthcare facilities in California. ECF No. 1 ¶¶ 1, 13. AMN is a "nationwide provider of temporary healthcare staffing solutions, and places healthcare professionals [like traveling nurses] . . . in temporary assignments at facilities." ECF No. 21-1 ¶ 3. Healthcare facilities such as Kaiser, offer a "bill rate"—"the total amount the facility is willing to pay a staffing agency such as AMN for every hour worked by a traveling nurse." ECF No. 1 ¶ 20. AMN "then deducts costs, overhead, and profit margin from the bill rate and advertises the hourly rate it is willing to pay a traveling nurse to accept the facility assignment." *Id.* AMN uses recruiters who pitch traveling nurses on new job opportunities. *Id.* ¶ 23. Plaintiffs Jean Pappas, Johannah Hetherington, Nikole Domke, Michelle Anderson, and Jane Angell are traveling nurses. *Id.* ¶¶ 7–11. "Kaiser contracts with nurse staffing agencies like

1    AMN to recruit and employ travel nurses like Plaintiffs and others similarly situated to fill certain

2    staffing needs at Kaiser facilities." *Id.* ¶ 77.  AMN recruiters called Plaintiffs and verbally

3    communicated: "(1) a description of the assignment, including the location of the assignment,

4    length of assignment, and total compensation; and (2) the potential repercussions associated with a

5    nurse cancelling the assignment, including potentially being blacklisted from working at AMN or

6    the hospital." ECF No. 35-1 ¶ 3.  Mr. Rick Woods, a former recruiter for AMN, notes that the

7    recruiters were "not trained or instructed to mention arbitration or other dispute resolution

8    procedures." *Id.*

9        Plaintiffs were told on the call that "they would be emailed a Professional Services

10   Agreement ("PSA") confirming [the] verbal agreement and that they should sign the document

11   immediately." *Id.* ¶ 4; *see also* ECF No. 35-2 ("Hetherington Decl.") ¶ 6 ("I understood from my

12   experience in travel nursing and my conversations with AMN's recruiter that if I did not sign the

13   document immediately, I would lose the opportunity"); ECF No. 35-3 ("Pappas Decl.") ¶ 3 ("if I

14   wanted it, I needed to accept immediately"); ECF No. 35-4 ("Domke Decl.") ¶ 3 (the recruiter

15   "indicated that I had 24 hours to decide whether to accept the offer, otherwise the offer would be

16   automatically rescinded"); ECF No. 35-6 ("Angell Decl.") ¶ 4 ("this was a great opportunity that

17   would fill quickly").  In the email attaching the PSA, the recruiters noted that "[t]he details

18   discussed regarding your verbal agreement are reflected in your contract for you to review and

19   sign electronically." ECF No. 35-3 at 13.

20       All Plaintiffs accepted a travel assignment from AMN to relocate and work at a Kaiser

21   facility located in California.  ECF No. 1 ¶¶ 7–11.  After Plaintiffs committed to an assignment

22   and began work, AMN gave Plaintiffs "take-it-or-leave it" demands that they either accept pay

23   decreases or face termination.  *Id.* ¶¶ 38–69.

24       On March 8, 2024, Plaintiffs filed a class action complaint alleging that AMN "knowingly

25   engag[ed] in 'bait-and-switch' practices and perpetrat[ed] fraud on travel nurses in a quest for

26   profit and market share." *Id.* ¶ 4.  Plaintiffs contend that AMN's "take-it-or-leave-it" demands to

27   accept less pay or be terminated violate the California Labor Code and California's Unfair

28   Competition Law and give rise to claims for breach of contract, breach of the covenant of good

2

faith and fair dealing, promissory estoppel, fraudulent inducement, fraudulent concealment, and negligent misrepresentation. *Id.* ¶¶ 101–201.  Plaintiffs additionally sue Kaiser for inducing breach of contract and for tortious interference with contractual relations. *Id.*  Plaintiffs seek damages, disgorgement, costs, attorneys' fees, and pre-and post-judgment interest. *Id.* at 41.

### B. Arbitration Provision

Prior to their start date, AMN required each Plaintiff to sign and acknowledge a form employment agreement called a PSA to begin work. *Id.* ¶ 26.  The PSAs are two pages long, and "substantially similar for all clinicians, except for the specific assignment details."  ECF No. 21-1 ¶ 7.  Each Plaintiff signed and acknowledged a PSA.

The last section of each PSA is titled "**ARBITRATION OF DISPUTES**" in boldface. The section provides as follows:

> The Company and Professional mutually consent to the resolution by arbitration, under the applicable rules of JAMS (which are available at jamsadr.com, or from the Company upon Professional's request), of all claims (common law or statutory) that the Company might have against Professional, or that Professional may have against the Company, its affiliated companies, the directors, employees or agents of any such company, and all successors and assigns of any of them, or against any customer to which Professional is assigned hereunder, including but not limited to all claims relating in any way to Professional's employment by the Company, or any past or future employment of Professional by the Company.
>
> The Company and Professional waive the right to have a court or jury trial on any arbitrable claim. The Federal Arbitration Act shall govern this Agreement, or if for any reason the FAA does not apply, the arbitration law of the state in which Professional rendered services to the Company. Notwithstanding any provision of the JAMS Rules, arbitration shall occur on an individual basis only, and a court of competent jurisdiction (and not an arbitrator) shall resolve any dispute about the formation, validity, or enforceability of any provision of this Agreement. Professional waives the right to initiate, participate in, or recover through, any class or collective action.
>
> To the maximum extent permitted by law, the arbitrator shall award the prevailing party its costs and reasonable attorney's fees; provided, however, that the arbitrator at all times shall apply the law for the shifting of costs and fees that a court would apply to the claim(s) asserted. Nothing in this Agreement prevents Professional from filing or recovering pursuant to a complaint, charge, or other communication with any federal, state or local governmental or law enforcement agency, and nothing in this Agreement requires arbitration of any claim that under the law (after application of Federal Arbitration Act preemption principles) cannot be made

> subject to a predispute agreement to arbitrate claims. This arbitration agreement shall remain in effect notwithstanding the termination of Professional's employment with the Company.

*See, e.g.*, ECF No. 21-1 at 11.

## II.  JURISDICTION

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

## III.  LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to written contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2. Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quotation marks and citations omitted).

On a motion to compel arbitration, the Court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Section 2 of the Federal Arbitration Act (FAA) provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The final clause of § 2, generally referred to as the savings clause, permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (quoting *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1259 (9th Cir. 2017)). "[T]he party opposing arbitration bears the burden of proving any defense, such as unconscionability." *Id.*

On a motion to compel arbitration, "courts rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). "Courts may consider evidence outside of the pleadings, such as declarations and other documents filed with the court." *Burger v. Northrop Grumman Sys. Corp.*, No. 21-cv-

4

06761-ABM-RWX, 2021 WL 8322270, at *4 (C.D. Cal. Oct. 27, 2021). Under Rule 56, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

If the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Where the claims alleged in a complaint are subject to arbitration, the Court may stay the action pending arbitration. 9 U.S.C. § 3.

## IV.   DISCUSSION

Defendants move to compel arbitration of Plaintiffs' claims under the PSA. ECF No. 21. Plaintiffs do not contest the existence of the arbitration agreement or that their individual claims fall within the scope of that agreement. They oppose the motion on the grounds that the arbitration agreement is unconscionable and therefore unenforceable. ECF No. 35.[1]

### A.   Unconscionability

Arbitration agreements may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). Under California law, "the core concern of unconscionability doctrine is the absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1145 (Cal. 2013). "The prevailing view is that procedural and substantive unconscionability must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability . . . [b]ut they need not be present in the same degree." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (Cal. 2015) (internal citation and quotation marks

---

[1] Defendants' objections to the declaration of Rick Woods and to certain paragraphs of the declarations of named plaintiffs Hetherington, Pappas, Domke, Anderson, and Angell are overruled.

5

omitted). California courts apply a "sliding scale" to determine whether to invalidate an agreement that is both procedurally and substantively unconscionable: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz v. Found. Health Pyschcare Servs., Inc.*, 24 Cal. 4th. 83, 114 (Cal. 2000), *abrogated in part on other grounds by Concepcion*, 563 U.S. 333.

"Because unconscionability is a contract defense, the party asserting the defense bears the burden of proof." *Sanchez*, 61 Cal. 4th at 911.

### 1.  Procedural Unconscionability

Procedural unconscionability "focuses on oppression or surprise due to unequal bargaining power." *Id.* at 910. "Oppression can be established 'by showing the contract was one of adhesion or by showing from the totality of the circumstances surrounding the negotiation and formation of the contract that it was oppressive.'" *Lim*, 8 F.4th at 1000 (quoting *Poublon*, 846 F.3d at 1260)). An adhesive contract is a standardized form offered by the party with superior bargaining power on a take-it-or-leave-it basis. *Id.*

Plaintiffs first argue that the arbitration provision is procedurally unconscionable because it was contained in a contract of adhesion. ECF No. 35 at 15–16. Plaintiffs contend that the PSA is adhesive because it is a standard form contract that was presented to each Plaintiff on a take-it-or-leave-it manner with no opportunity to negotiate or reject individual terms. *Id.* Plaintiffs argue they "did not believe that they could negotiate or edit the document, nor did the format in which they received it even have that functionality." *Id.* at 13.

Because Plaintiffs' offers of employment were contingent on signing the PSAs, which are standard form contracts drafted by Defendants, the arbitration agreement amounts to a contract of adhesion.[2]

---

[2] Defendants state that in *Chamber of Commerce v. Bonta*, 62 F.4th 473 (9th Cir. 2023) ("*Bonta*"), "the Ninth Circuit held that mandatory arbitration agreements imposed as conditions of employment are lawful and that state laws restricting the ability of employers to mandate arbitration are preempted by the FAA." ECF No. 21 at 14. To the extent Defendant mean to suggest that *Bonta* holds that mandatory arbitration agreements are *always* lawful in such circumstances, the argument is not well taken. Immediately after the passage cited by Defendants,

6

However, under California law, while an adhesive contract establishes "some degree of procedural unconscionability," a contract of adhesion is not "per se unconscionable." *Lim*, 8 F.4th at 1000. Beyond the contract itself, courts may consider additional circumstances such as:

> (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney.

*OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 126–27 (2019) (internal citations omitted).

Here, Plaintiffs argue that the Court should find additional oppression factors for two reasons: (1) AMN placed them under significant time pressure to accept the PSA such that they did not have time to have an attorney review the terms; and (2) that AMN failed to attach the JAMS rules. ECF No. 35 at 16–18.

### i.     Sufficient Time

Plaintiffs first contend that they were under significant time pressure to accept the PSAs—often immediately or within 24-hours. ECF No. 35 at 16–17. The "PSAs were not sent until multiple weeks after a verbal agreement was reached, meaning the arbitration agreement was not even presented until a short time before the assignment start date, at which point the nurses were already fully committed." *Id.* at 16. Furthermore, according to Plaintiffs, the "significantly compressed time frame did not allow for the nurses to consult a lawyer as to the arbitration provision." *Id.*

Defendants respond that Plaintiffs were not pressured to sign their PSAs immediately. ECF No. 36 at 6–7. First, the emails transmitting the PSAs to the Plaintiffs contained no deadlines by which the agreements had to be signed. *Id.* at 6 (citing e.g., Angell Decl., Ex. 1; Pappas Decl., Ex. 3). Second, the PSAs were sent to Plaintiffs with ample time for their review (typically approximately two weeks prior to their start date). *Id.* (citing ECF No. 25-1 ("Jackowski Decl.")).

---

the *Bonta* court writes, "Of course, mandatory arbitration provisions in employment contracts of adhesion are not enforceable if the provisions are procedurally and substantively unconscionable, or otherwise unenforceable under generally applicable contract rules." *Bonta*, 62 F.4th at 488. Nothing in *Bonta* alters the holding in *Poublon* or the other authorities cited in this order.

1  Third, Defendants assert that although Plaintiffs allege that they were told to sign their PSAs
2  immediately, ECF No. 35 at 8, except for Plaintiff Angell who signed the PSA the same day, the
3  remaining Plaintiffs signed their PSAs between one to seven days after the PSA was sent.  ECF
4  No. 36 at 7 (citing ECF No. 36-1 ("Sherwood Decl.")).

The evidence supports Plaintiffs on this point.  The declarations submitted by Plaintiff Pappas, Senior Director of Contracts for AMN Healthcare Kristen Sherwood, and Director of Product Management for AMN Healthcare, Inc., Laura Jackowski establish the following timeline for the PSAs at issue:

| Plaintiff | Date PSA sent via Email | Date Signed | Term Beginning |
|---|---|---|---|
| Pappas | March 19, 2022 (Pappas Decl. Ex. 3) | March 21, 2022 (Jackowski Decl. at 12) | April 14, 2022 (Jackowski Decl. at 10) |
| Heatherington | February 23, 2022 (Sherwood Decl. ¶ 15) | February 24, 2022 (Jackowski Decl. at 15) | March 14, 2022 (Jackowski Decl. at 14) |
| Domke | February 14, 2022 (Sherwood Decl. ¶ 10) | February 15, 2022 (Jackowski Decl. at 22) | March 15, 2022 (Jackowski Decl. at 20) |
| Anderson | March 22, 2022 (Sherwood Decl. ¶ 13) | March 28, 2022 (Jackowski Decl. at 31) | April 12, 2022 (Jackowski Decl. at 29) |
| Angell | March 20, 2022 (Angell Decl. Ex. 1) | March 20, 2022 (Jackowski Decl. at 38) | April 12, 2022 (Jackowski Decl. at 36) |

Thus, while many of the plaintiffs received the PSAs between 20 and 30 days—an average of almost three weeks—before they started work, almost all of them signed the PSA within one day or less of receiving it.  This supports plaintiffs' allegation that AMN recruiters told them they must sign the PSA immediately.  *See, e.g.,* Domke Decl. ¶ 3 (the recruiter "indicated that I had 24 hours to decide whether to accept the offer, otherwise the offer would be automatically rescinded").

1    Courts considering similar facts have found that giving employees between one and four
2 days to sign an arbitration agreement demonstrates "significant oppression." *Ali v. Daylight*
3 *Transp., LLC*, 59 Cal. App. 5th 462, 474–75 (2020) (quoting *OTO,* 8 Cal. 5th at 127); *see also*
4 *Beco v. Fast Auto Loans, Inc.*, 86 Cal. App. 5th 292, 301 (2022) (finding "significant oppression"
5 where the plaintiff was "given a few minutes to quickly acknowledge a multitude of documents,"
6 and "was told by supervisors that if he did not agree to acknowledge the documents, he would be
7 terminated").
8    The Court finds that Plaintiffs faced undue time pressure in their consideration of the PSAs
9 and that is evidence of oppression.

### ii. Failure to Incorporate JAMS Rules

11    Next, Plaintiffs contend that AMN's failure to identify which specific set of JAMS rules
12 apply to its arbitration agreement is another example of oppressive conduct. ECF No. 35 at 17.
13 Defendants respond that the provision allows Plaintiffs to ask for a copy of the JAMS rules, but
14 none of the Plaintiffs allege having asked for the rules from AMN. ECF No. 36 at 10–11.
15 Defendants also contend that under *Baltazar v. Forever 21, Inc.*, Plaintiffs cannot maintain a claim
16 of procedural unconscionability unless they also allege that there was something substantively
17 unconscionable about the unidentified rules, *id.* (citing *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th
18 1237, 1245 (2016)), which plaintiffs have not done.
19    Defendants' second argument is correct. As the California Court of Appeal has stated:

> A viable claim of procedural unconscionability for failure to identify
> the particular version of the applicable arbitral rules—like a claim
> for failure to attach the rules themselves—depends in some manner
> on the substantive unfairness of a term or terms contained within the
> unidentified version of the rules applicable to the dispute . . . That is,
> if the unidentified rules are not themselves substantively unfair, then
> the employer cannot be faulted for vaguely referring to such rules.

24 *Davis v. Kozak*, 53 Cal. App. 5th 897, 909 (2020) (relying on *Baltazar*, 62 Cal. 4th at 1245),
25 *disapproved of on other grounds by Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 498
26 (2024). Because Plaintiffs do not identify how the JAMS rules are substantively unconscionable,
27 their argument regarding Defendants' failure to provide those rules fails.
28    Plaintiffs attempt to distinguish *Baltazar* on the grounds that "Plaintiffs' argument here is

9

different: they argue that AMN's failure to identify which *specific* set of JAMS rules applies contributes to procedural unconscionably." ECF No. 35 at 18 n.7 (emphasis in original). This is a distinction without a difference. In both instances, the employee (or prospective employee) is neither provided with the relevant arbitration rules nor informed how to find them. Furthermore, the cases Plaintiffs cite in their opposition pre-date *Baltazar* (such as, *Carbajal v. CWPSC, Inc.* 245 Cal. App. 4th 227 (2016)) and are thus inapposite. *See Davis v. Kozak*, 53 Cal. App. 5th at 909 ("the full scope of Carbajal's procedural unconscionability rationale is in question after the Supreme Court issued its decision in *Baltazar*").[3]

### b. Unfair Surprise

The Court next reviews whether there was unfair surprise that resulted in procedural unconscionability. Unfair surprise "may arise when a party with less bargaining power is not told about an unusual provision, or the party is otherwise 'lied to, placed under duress, or otherwise manipulated into signing the arbitration agreement.'" *Poublon*, 846 F.3d at 1261 n.2 (quoting *Baltazar*, 62 Cal. 4th at 1245). "Surprise may [also] occur when 'the allegedly unconscionable provision is hidden within a prolix printed form,'" or "when its substance is 'opaque.'" *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1091 (9th Cir. 2024). Plaintiffs argue that surprise is present here because the arbitration "provision is permeated with confusing legal jargon that is indecipherable to a layperson." ECF No. 35 at 19. Specifically, Plaintiffs take issue with the cost-shifting language of the arbitration clause in the PSA:

> To the maximum extent permitted by law, the arbitrator shall award the prevailing party its costs and reasonable attorney's fees; provided, however, that the arbitrator at all times shall apply the law for the shifting of costs and fees that a court would apply to the claim(s) asserted.

*See, e.g.*, ECF No. 21-1 at 11. Defendants respond that "Plaintiffs received their PSAs weeks before their start date and had the ability to consult with an attorney before executing the two-page

---

[3] Plaintiff cites *Shahtout by & through Shahtout v. California Psychcare, Inc.*, which does find that an arbitration agreement's "failure to provide notice of the rules applicable for the arbitration weighs in favor of a finding of procedural unconscionability." 562 F. Supp. 3d 913, 928 (C.D. Cal. 2022). Even though *Shahtout* post-dates *Baltazar*, however, it does not appear to have considered that case, and the authorities on which it relies substantially predate *Baltazar*. *Id.* at 927. This Court declines to follow *Shahtout*.

PSA and single sentence they claim they did not understand." ECF No. 36 at 12.

Whether legal jargon in an arbitration provision creates procedural unconscionability is a fact-specific inquiry. For example, in *OTO, L.L.C. v. Kho*, the arbitration agreement stated that "[i]f CCP § 1284.2 conflicts with other substantive statutory provisions or controlling case law, the allocation of costs and arbitrator fees shall be governed by said statutory provisions or controlling case law instead of CCP § 1284.2." 8 Cal. 5th at 128–29. The California Supreme Court held that:

> [i]t is difficult to envision that [an employee] would have had any idea what the cited code section says or that a 13-year-old case [*Armendariz*] creates a relevant exception to it. This example illustrates the difficulty a layperson would have in deciphering key terms. It would have been nearly impossible to understand the contract's meaning without legal training and access to the many statutes it references.

*Id.* at 129.

By contrast, in *Davis v. Kozak*, the Court found only "low procedural unconscionability" where "[t]he agreement [was] set forth in a standalone three-page document, clearly labeled 'Binding Arbitration Agreement,' with standard-sized and readable text. *With the exception of a few paragraphs*, the agreement [did] not contain overly long or complicated sentences or use statutory references and legal jargon." 53 Cal. App. 5th at 907–08 (emphasis added).

Like the employee in *OTO*, it is not clear that Plaintiffs would have had any idea what it means for an arbitrator to apply "the law for the shifting of costs and fees that a court would apply to the claim(s) asserted." *See, e.g.*, ECF No. 21-1 at 11. At the same time, like the agreement in *Davis*, except for the single sentence regarding cost-shifting, the remainder of the agreement is short, in normal font, easy to comprehend, and contains no legal jargon.

The recent Ninth Circuit decision in *Ronderos* is instructive. 114 F.4th at 1091. There, "a cost-splitting provision require[d] the parties to equally share the cost of arbitration and arbitrator fees, 'unless other express statutory provisions or controlling case law conflict with this allocation and require the payment of costs and fees by the Company.'" *Id.* at 1088. Additionally, "the agreement include[d] a choice-of-law provision," which provided that the Federal Arbitration Act ("FAA") would govern, unless "for any reason the FAA does not apply or if the FAA is silent on

11

1    the issue[,] then the provisions of the Indiana Uniform Arbitration Act" would apply. *Id.* at 1092.
2    The *Ronderos* court found that the cost-splitting provision was procedurally unconscionable and
3    "opaque because it [did] not indicate which state's law control[led] the question . . . , and it would
4    be extremely difficult for a layperson . . . to figure that out." *Id.* at 1091.

5          Similarly in this case, the cost-shifting provision does not specify which law controls the
6    agreement. Instead, as in *Ronderos*, the agreement states, that "[t]he Federal Arbitration Act shall
7    govern this Agreement, or if for any reason the FAA does not apply, the arbitration law of the
8    state in which Professional rendered services to the Company." *See, e.g.*, ECF No. 21-1 at 11.
9    The Court therefore finds that the "cost-splitting provision, coupled with the choice-of-law
10   provision, makes it difficult (even for a lawyer) to figure out whether [plaintiffs] would have to
11   pay half the arbitration costs or not." *Ronderos*, 114 F.4th at 1092. Thus, the provision creates
12   "some surprise" which adds to the procedural unconscionability of the agreement. *Id*.

13         Overall, the Court finds that there is a moderate degree of procedural unconscionability
14   based on the adhesive nature of the form contract, the pressure on prospective employees to sign
15   the PSA immediately, and the indeterminate language regarding cost-shifting.

16             **2.**     **Substantive Unconscionability**

17         "Substantive unconscionability examines the fairness of a contract's terms." *Lim*, 8 F.4th
18   at 1001. "California law seeks to ensure that contracts, particularly contracts of adhesion, do not
19   impose terms that are overly harsh, unduly oppressive, or unfairly one sided." *Id.* at 1002. An
20   arbitration agreement is substantively lawful if it "(1) provides for neutral arbitrators, (2) provides
21   for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of
22   relief that would otherwise be available in court, and (5) does not require employees to pay either
23   unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration
24   forum." *Armendariz*, 24 Cal. 4th at 102 (internal quotations and citation omitted). "[W]hen an
25   employer imposes mandatory arbitration as a condition of employment, the arbitration agreement
26   or arbitration process cannot generally require the employee to bear any *type* of expense that the
27   employee would not be required to bear if he or she were free to bring the action in court." *Id.* at
28   110–11 (emphasis in original). A provision that allows attorney fee- and cost-shifting from the

employer back onto the employee violates *Armendariz*'s prohibition on the imposition of "any type of expense" the employee would not normally be required to bear. *Zaborowski v. MHN Gov't Servs., Inc.*, 936 F. Supp. 2d 1145, 1155 (N.D. Cal. 2013), *aff'd*, 601 F. App'x 461 (9th Cir. 2014); *Lucas v. Gund, Inc.*, 450 F. Supp. 2d 1125, 1133 (C.D. Cal. 2006).

Here, Plaintiffs argue the PSA is substantively unconscionable because it requires employees potentially to pay the employer's attorneys' fees or and costs. ECF No. 35 at 19–27. The PSA states that "[t]o the maximum extent permitted by law, the arbitrator shall award the prevailing party its costs and reasonable attorney's fees; provided, however, that the arbitrator at all times shall apply the law for the shifting of costs and fees that a court would apply to the claim(s) asserted." ECF No. 21-1 at 11. Defendants respond that the PSA actually complies with *Armendariz* because it "obligat[es] the arbitrator to apply the law for the shifting of costs and fees that a California court would apply to the claims asserted." ECF No. 36 at 13. Defendants claim that the PSA requires the arbitrator to "award Plaintiffs their fees and costs if they win, requires Defendants to pay costs relating to the arbitration, and precludes the arbitrator from awarding Defendants their fees and costs even if they win." *Id.* Therefore, the question is whether the qualifying language in the PSA is enough to render the fee-shifting provision lawful.

Both California state courts and federal district courts applying California law are divided about whether qualifying language can save an otherwise unconscionable provision. *Compare Hasty v. Am. Auto. Assn.*, 98 Cal. App. 5th 1041, 1062 (2023), *review denied* (May 1, 2024) (adding to the "extent permitted by law," does not save an otherwise unconscionable confidentiality clause "because the employee would have no way of knowing what would be covered or not covered by this provision"); *Ortolani v. Freedom Mortg. Corp.*, No. 17-cv-1462-JGB-KKX, 2017 WL 10518040, at *6 (C.D. Cal. Nov. 16, 2017) (finding that a cost-shifting provision was not saved by the incorporation of JAMS Rules which do not require fee-sharing) *with Aanderud v. Superior Court*, 13 Cal. App. 5th 880, 886, 895–96 (2017) (finding that an arbitration agreement that addressed the costs of arbitration, and also referenced and linked specific JAMS rules, saved an otherwise unconscionable clause about cost splitting); *Coleman v. Crossmark Inc.*, No. 20-cv-5025-DSF-KS, 2020 WL 11036932, at *6 (C.D. Cal. Nov. 19, 2020)

(finding that where an arbitration agreement provides for the "recovery of attorney's fees in an appropriate circumstance or in accordance with applicable law," such a term is not substantively unconscionable).

The Court need not resolve this dispute, however, because the qualifying language at issue here does not adequately inform employees that the fee-shifting provision will not be enforced. Thus, even if qualifying language might sometimes be sufficient to save an otherwise unconscionable provision, it cannot do so here. *Ronderos* is instructive. In that case, as here, the "agreement indicate[d] only that the cost-splitting requirement will not apply if it conflicts with a statute or case law, without specifying that California law will control and without acknowledging that a conflict with California law actually exists." 114 F.4th at 1092. Defendants argued that that this provision "simply sets forth in plain language the rule from *Armendariz* that 'the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court.'" *Id.* (quoting *Armendariz*, 24 Cal. 4th at 111). The *Ronderos* court rejected that argument, finding "there is no such plain statement in the agreement." *Id.* The Court went on to note that "[i]f [defendants] did not intend to require . . . [plaintiffs] to split the cost of arbitration because such a requirement conflicts with California law, [defendants] could have made that clear in plain language." *Id.*

The Ninth Circuit "[did] not decide whether [defendants'] cost-splitting provision is substantively unconscionable because doing so [did] not affect the outcome of [the] case." *Ronderos*, 114 F.4th at 1093. Nonetheless, applying *Ronderos* to the facts at issue results in the conclusion that the PSAs are substantively unconscionable, because qualifying language that does not actually inform a contracting party that the fee-shifting provision will not be enforced is the same as not having qualifying language at all. *See id.* (holding that an agreement that "plainly states that 'the costs of arbitration and arbitrator fees will be split equally' . . . creates the impression that employees . . . will have to pay significant costs if they file an arbitration claim" and that "by creating that impression, the provision likely deters employees from filing claims— whether the default rule is actually enforceable against them or not").

14

1    Thus, the Court concludes that the fee-shifting provision in the PSAs is substantively
2    unconscionable.

### B.    Sliding Scale

Having determined the presence and degree of procedural and substantive unconscionability, the Court next applies the sliding scale measurement to determine whether the PSA is enforceable.  "As noted above, unconscionability works on a sliding scale: the greater the procedural unconscionability, the less substantive unconscionability is required to make the contract unenforceable, and vice versa." *Fisher v. MoneyGram Int'l, Inc.*, 66 Cal. App. 5th 1084, 1107 (2021).  While the PSA displays a moderate degree of procedural unconscionability, it contains a high degree of substantive unconscionability, rendering the PSA unconscionable.  *See Hale v. Brinker Int'l, Inc.,* No. 21-CV-09978-VC, 2022 WL 2187397, at *1 (N.D. Cal. June 17, 2022) ("Even absent other [procedural] unconscionable terms . . . the cost-shifting provision at issue is reason enough to decline to enforce the agreement and deny [Defendants'] motion to compel arbitration.").

### C.    Severance

Given the finding that the PSA is unconscionable, the next question is whether the substantively unconscionable provision can be severed from the contract.

"California law provides, as a general rule, that unlawful contractual provisions should be severed and the remainder of the contract enforced." *Ronderos*, 114 F.4th at 1099 (citing Cal. Civ. Code § 1599).  However, California Civil Code § 1670.5(a) provides,

> If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

Cal. Civ. Code § 1670.5(a).  "A court has discretion to refuse to enforce an entire arbitration clause, rather than strike the unconscionable provisions and enforce the remainder of the clause, if the entire arbitration clause is 'permeated' with unconscionability." *Gentry v. Empire Med. Training*, No. 13-CV-02254-WHO, 2013 WL 4647530, at *6 (N.D. Cal. Aug. 29, 2013) (quoting

15

*Lhotka v. Geographic Expeditions, Inc.,* 181 Cal. App. 4th 816, 826 (2010)). "An arbitration agreement may be permeated with unconscionability if it contains more than one unconscionable provision, because 'multiple defects indicate a systematic effort to impose arbitration not simply as an alternative to litigation, but as an inferior forum that works to the stronger party's advantage.'" *Id.* (quoting *Lhotka*, 181 Cal. App. 4th at 826).

Plaintiffs argue that although only one unconscionable provision is at issue, severance is still inappropriate because otherwise there will no disincentive for employers to include cost-and fee-shifting provisions in arbitration agreements, thereby discouraging employees from trying to vindicate their rights. ECF No. 35 at 28 (citing *Hale*, 2022 WL 2187397, at *1). They also argue that "severance is not possible here because it would require the Court to draft new language relating to the cost-and-fee-shifting provisions, which it cannot do." ECF No. 35 at 30. That is, "the severance of the entire cost-and-fee shifting provision would leave a gap as to which party will pay the cost of arbitration." *Id.* Defendants respond that the fee-shifting provision does not "permeate the arbitration agreement" and that "the single, purportedly unconscionable term 'can be severed without disturbing the primary intent of the parties to arbitrate their disputes.'" ECF No. 36 at 14-15 (quoting *Openshaw v. FedEx Ground Package Sys., Inc.*, 731 F. Supp. 2d 987, 998 (C.D. Cal. 2010).

The Court finds Plaintiff's first argument to be dispositive. As another court in this district has persuasively explained:

> Even though the cost-splitting provision is the only substantively unconscionable provision of the agreement, it remains consequential. Cost-and fee-shifting provisions can create a chilling effect, discouraging employees from vindicating their rights for fear that failure will prove cripplingly expensive. If employees think they must split the costs of arbitration, which can easily run in the thousands of dollars, they may (and often will) simply decline to bring claims in the first place. Even more so where employees lack deep pockets and seek to bring claims for wage and hour violations, which risks loss of employment or harm to future employment prospects. Were courts to excise those provisions and enforce arbitration agreements anyway, employers would have no incentive not to chill claims by including cost-shifting provisions in arbitration agreements. Even absent other unconscionable terms, therefore, under these circumstances the cost-shifting provision at issue is reason enough to decline to enforce the agreement and deny Brinker's motion to compel arbitration.

16

*Hale*, 2022 WL 2187397, at *1 (citations omitted). The Court agrees with *Hale*'s analysis and accordingly declines to sever the unconscionable provision.

## CONCLUSION

For the foregoing reasons, Defendants' motion to compel arbitration is denied.

**IT IS SO ORDERED.**

Dated: January 8, 2025



JON S. TIGAR
United States District Judge

17